Filed 2/22/22  P. v. Montano CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL ANTHONY MONTANO,<br><br>Defendant and Appellant. | B302742<br><br>(Los Angeles County<br>Super. Ct. No. KA082558) |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Reversed and remanded with directions.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Michael Anthony Montano appeals the trial court's denial of his petition to vacate his convictions for murder and attempted murder under Penal Code section 1170.95 (Section 1170.95). Montano alleged that the jury convicted him of both crimes under the natural and probable consequences doctrine, which has since been invalidated as a basis for murder or attempted murder liability by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437). After issuing an order to show cause and holding an evidentiary hearing, the court denied the petition. The court principally reasoned that in light of certain language in the jury's instruction on the elements of attempted murder, Montano's convictions necessarily reflected a jury finding that Montano was guilty of both charged offenses under a direct aiding and abetting theory. With respect to the attempted murder conviction, the court additionally reasoned that Section 1170.95 did not apply to attempted murder. Section 1170.95 has since been amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) to apply expressly to attempted murder convictions under the natural and probable consequences doctrine.

On appeal, Montano contends, and the Attorney General agrees: (1) the court prejudicially erred in determining the jury necessarily convicted Montano of murder and attempted murder under a direct aiding and abetting theory; and (2) in light of SB 775, the court should reconsider Montano's eligibility for relief from his attempted murder conviction.  We agree with the parties on both points.  Accordingly, we reverse the order denying Montano's petition, and remand for a new evidentiary hearing on Montano's eligibility for relief from both convictions.

## BACKGROUND

### A. Underlying Judgment

Montano and codefendant Louis Bachicha were each charged with one count of murder (Pen. Code, § 187, subd. (a)) and one count of attempted murder (*id.*, §§ 187, subd. (a), 664), with associated gang and firearm allegations. (*People v. Bachicha* (Dec. 13, 2010, B215687) 2010 Cal.App.Unpub. LEXIS 9814, *5 (*Bachicha*).)

### 1. Trial Evidence

The following facts were established primarily through the testimony of surviving victim Anne Marie Martinez: On an evening in March 2008, while Montano was driving himself and codefendant Bachicha through territory claimed by the Puente gang (a rival of the Bassett gang with which Montano and Bachicha were associated), Montano stopped his car behind Martinez and her boyfriend Richard Lopez,

3

who were on the sidewalk.  (*Bachicha, supra,* 2010 Cal.App.Unpub. LEXIS at *2-*4, *6-*7, *35.)  Bachicha pulled out a handgun, which he struck against the door of the car.  (*Id.* at *3.)  Bachicha demanded to know Lopez and Martinez's gang affiliation, said "Fuck Peanuts" (a reference to the rival Puente gang, according to one of the prosecution's gang experts), and repeated the name of the Bassett gang.  (*Id.* at *3, *35.)

Montano exited the car, approached Lopez while verbally challenging him, and hit him on the head. (*Bachicha, supra,* 2010 Cal.App.Unpub. LEXIS at *3.) Montano attempted to hit Lopez again, and hit Martinez when she physically intervened.  (*Ibid.*)  After Lopez said he and Martinez were not associated with any gang, Montano returned to his car.  (*Id.* at *3-*4.)  As Montano drove himself and Bachicha away, Bachicha fired six to eight shots toward the victims, killing Lopez and grazing Martinez.  (*Id.* at *4.)

Montano and Bachicha presented alibi defenses. (*Bachicha, supra,* 2010 Cal.App.Unpub. LEXIS at *5.) Montano did not testify.  (*Id.* at *9, fn. 2.)

### 2. Judgment and Appeal

With respect to the charges against Montano, the jury was instructed on both a direct aiding and abetting theory

4

and a natural and probable consequences theory.[1] (*Bachicha, supra,* 2010 Cal.App.Unpub. LEXIS at *33-*34.) The instruction on the natural and probable consequences theory (CALCRIM No. 403) stated, in relevant part, "The People are alleging that the defendant originally intended to aid and abet either brandishing a firearm or assault with a firearm. [¶] The defendant is guilty of murder and attempted murder if you decide that the defendant aided and abetted one of these crimes and that murder and attempted murder was [*sic*] the natural and probable result of one of these crimes."

The instruction on the elements of attempted murder (CALCRIM No. 600) stated the People were required to prove the defendant intended to kill the victim, and continued, "A person may intend to kill a specific victim or

---

[1] "[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) "[T]he natural and probable consequences doctrine [as applied to murder] authorizes precisely what Senate Bill 1437 forbids: it allows a factfinder to impute malice 'to a person based solely on his or her participation in a crime.'" (*Id.* at 847.) In contrast, "Senate Bill 1437 does not eliminate *direct* aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Id.* at 848, italics added.)

victims and at the same time intend to kill anyone in a particular zone of harm or 'kill zone.' In order to convict a defendant of the attempted murder of Anne Marie Martinez, the People must prove that the defendant not only intended to kill Richard Lopez but also either intended to kill Anne Marie Martinez, or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Anne Marie Martinez or intended to kill Richard Lopez by harming everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Anne Marie Martinez."

In closing argument, the prosecutor advanced both the direct and natural-and-probable-consequences theories of Montano's guilt as an aider and abettor. (*Bachicha*, *supra*, 2010 Cal.App.Unpub. LEXIS at *2, *32-*33.) With respect to the latter, the prosecutor told the jury, "'There was reference in the judge's instructions to you based [o]n what's called a natural and probable consequence theory. . . . That means if you believe . . . that Montano aided and abetted Mr. Bachicha in brandishing a weapon, committing an assault with a deadly weapon and that the natural and probable consequence of using a gun, hitting those kids up on the street that night in the way in which it was done would naturally and probably result in a shooting, possibly resulting in a death, then you can find [Montano] guilty . . . .'"

Montano and Bachicha were found guilty as charged, and the special allegations were found true. (*Bachicha*,

*supra*, 2010 Cal.App.Unpub. LEXIS at *5.) Each defendant was sentenced to imprisonment for 84 years to life. (*Ibid.*) On their direct appeals, we affirmed the judgment, as modified in a manner immaterial to this appeal. (*Id.* at *50.) We held, inter alia, "There was substantial evidence to support Montano's conviction of murder and attempted murder under both theories of aider and abettor liability advanced by the prosecution." (*Id.* at *2; see also *id.* at *42 [holding jury reasonably could find Bachicha's shooting the victims was "a natural and probable consequence of the armed confrontation of strangers in a rival gang's territory"].)

### B. The Instant Petition

In February 2019, Montano filed a petition for resentencing under Section 1170.95, alleging that he was convicted under the natural and probable consequences doctrine, and that he was not guilty under any theory that remained valid in the wake of SB 1437. At Montano's request, the court appointed counsel for him.

The prosecution opposed the petition, initially relying solely on the argument that Section 1170.95 was unconstitutional. In addition to replying to the prosecution's constitutional arguments, Montano filed a brief arguing that Section 1170.95 applied to attempted murder, and that he was entitled to relief from both convictions because the jury might have found him guilty pursuant to the natural-and-probable-consequences instruction. The prosecution filed an

7

additional opposition, in which it asserted that Section 1170.95 did not apply to attempted murder, and that Montano could still be convicted of murder as a direct aider and abettor.

The trial court issued an order for the prosecution to show cause regarding whether Montano was entitled to "the relief sought." On November 20, 2019, the court held an evidentiary hearing, at which it considered only the record of conviction.[2] The parties disputed whether the trial evidence was sufficient to establish Montano's guilt under any still-valid theory. Without making an independent finding of Montano's guilt, the court denied the petition. With respect to the attempted murder conviction, the court first reasoned that under then-current caselaw, Section 1170.95 did not apply. With respect to both convictions, the court additionally reasoned that because the instruction on the elements of attempted murder (CALCRIM No. 600) had stated the jury could not convict a defendant of the attempted murder of Martinez unless it found the defendant intended to kill Lopez and either Martinez specifically or anyone (including Martinez) within the kill zone, Montano's

---

[2] In advance of the evidentiary hearing, Montano submitted a declaration from Bachicha, who stated that he had not formed the intent to shoot the victims until Montano began driving away, and that Montano had not known or shared Bachicha's intent to shoot. The court declined to consider this declaration, as Bachicha was unavailable for cross-examination on the date of the hearing and Montano did not consent to a continuance.

8

convictions necessarily reflected a jury finding that Montano was guilty of both charged offenses under a direct aiding and abetting theory. Montano timely appealed.

## DISCUSSION

### A. Murder Conviction

As amended by SB 775, Section 1170.95 permits a defendant who was convicted of murder or attempted murder under a natural and probable consequences theory, but who could not be convicted of murder or attempted murder because of SB 1437's changes to the law (including its elimination of liability for these crimes under the natural and probable consequences doctrine), to petition the sentencing court to have the murder or attempted murder conviction vacated and to be resentenced on any remaining counts. (Pen. Code, § 1170.95, subd. (a).) Where, as here, the court finds the petitioner has made a prima facie showing of eligibility for relief, and the parties do not stipulate to relief after issuance of an order to show cause, the court must hold an evidentiary hearing on the petitioner's eligibility for relief. (*Id.*, § 1170.95, subds. (c)-(d).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by [SB 1437]." (*Id.*, § 1170.95, subd. (d)(3); see also, e.g., *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 ["the trial court, acting as an

9

independent factfinder, [is required] to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory"].)

Here, the parties agree the trial court erred in determining the jury necessarily found Montano guilty under a direct aiding and abetting theory, rather than the natural and probable consequences theory on which the jury also had been instructed. Although the parties dispute which, if any, harmless-error standard applies, the Attorney General concedes the court's error was prejudicial even under the standard he advances, viz., the reasonable-probability standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

We agree with the parties that the court prejudicially erred in determining the jury necessarily found Montano guilty as a direct aider and abettor. As the Attorney General suggests, the court's error was understandable in light of CALCRIM No. 600's language stating the jury could not convict a defendant of attempted murder unless it found beyond a reasonable doubt that the defendant intended to kill both Lopez and either Martinez specifically or anyone (including Martinez) in the kill zone. But this language was inconsistent with the instruction on the natural and probable consequences doctrine (CALCRIM No. 403), which authorized the jury to convict Montano on both counts without finding he acted with intent to kill, stating, "The defendant is guilty of murder and attempted murder if you decide that the defendant aided and abetted [brandishing a

10

firearm or assault with a firearm] and that murder and attempted murder was [*sic*] the natural and probable result of one of these crimes."  In closing argument, the prosecutor referred to CALCRIM No. 403 and urged the jury to apply it to find Montano guilty.  Because the jury might have convicted Montano of both crimes based on CALCRIM No. 403, we conclude the court erred in determining his convictions necessarily reflected a jury finding that he was guilty as a direct aider and abettor.  (See *People v. Gay* (2008) 42 Cal.4th 1195, 1224-1226 [where trial court first instructed penalty-phase jury that defendant's guilt had been conclusively proven, then instructed jury that it could consider in mitigation any lingering doubt concerning defendant's guilt, Supreme Court had "'no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict,'" particularly because prosecutor relied on first instruction in closing argument].)

    We further agree with the parties that the error was prejudicial.  Even assuming, arguendo, that the *Watson* standard applies, that standard compels reversal, as there is more than an abstract possibility that absent the error, the court would have determined the prosecution failed to meet its burden to prove Montano's guilt under a still-valid theory beyond a reasonable doubt.  (See *People v. Sandoval* (2015) 62 Cal.4th 394, 422 [under *Watson* standard, error is reversible if there is a reasonable probability -- meaning more than an abstract possibility -- that the appellant would have obtained a more favorable result absent the error].)

11

Accordingly, we will reverse the order denying Montano's petition, and remand for a new evidentiary hearing.

### B. Attempted Murder Conviction

Montano does not challenge the trial court's conclusion that Section 1170.95 did not apply to attempted murder at the time the court made its ruling. (See former Pen. Code, § 1170.95, subd. (a).) However, SB 775 has since amended the statute, expressly specifying that it applies to attempted murder convictions under the natural and probable consequences doctrine. (Pen. Code, § 1170.95, subd. (a); Stats. 2021, ch. 551, § 2.) We agree with the parties that on remand, the court should reconsider Montano's eligibility for relief from his attempted murder conviction. Accordingly, we will direct the court to hold a new evidentiary hearing on Montano's eligibility for relief from both his convictions.[3]

---

[3] We disagree with the Attorney General's suggestion that before the new evidentiary hearing, the trial court must determine whether Montano has made a prima facie showing with respect to his attempted murder conviction. The court implicitly made this determination when it issued an order to show cause regarding whether Montano was entitled to "the relief sought," which included relief from his attempted murder conviction. In any event, we conclude as a matter of law that Montano has made a prima facie showing with respect to both convictions. As explained above, the jury might have convicted Montano of both crimes under the natural and probable consequences doctrine. At the prima facie stage, the court was required to accept as true Montano's allegations that he was not

*(Fn. is continued on the next page.)*

12

**DISPOSITION**

The order denying Montano's petition for resentencing under Penal Code section 1170.95 is reversed. The matter is remanded to the trial court with directions to hold a new evidentiary hearing on Montano's eligibility for relief from his convictions for murder and attempted murder.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

---

guilty under any other, still-valid theory. (See *People v. Lewis* (2021) 11 Cal.5th 952, 974.) Thus, Montano has cleared the "very low" bar set by the Legislature at the prima facie stage. (*Id.* at 972.)